Slip Op 18-97

## UNITED STATES COURT OF INTERNATIONAL TRADE

ARISTOCRAFT OF AMERICA, LLC, SHANGHAI WELLS HANGER CO., LTD, HONG KONG WELLS LTD., HONG KONG) WELLS LTD. (USA), BEST FOR LESS DRY CLEANERS SUPPLY LLC, IDEAL CHEMICAL & SUPPLY COMPANY, LAUNDRY & CLEANERS SUPPLY INC., ROCKY MOUNTAIN HANGER MFG CO., ROSENBERG SUPPLY CO., LTD., and ZTN MANAGEMENT COMPANY, LLC,

              Plaintiffs,

      v.

UNITED STATES,

              Defendant.

**PUBLIC**

Before: Leo M. Gordon, Judge

Consol. Court No. 15-00307

## OPINION and ORDER

[Remand results remanded to Commerce.]

Dated: August 9, 2018

Jonathan M. Freed, Robert G. Gosselink, and Jarrod M. Goldfeder, Trade Pacific PLLC of Washington, DC for Consolidated Plaintiffs Shanghai Wells Hanger Co., Ltd., Hong Kong Wells Ltd., Hong Kong Wells Ltd. (USA), Best For Less Dry Cleaners Supply LLC, Ideal Chemical & Supply Company, Laundry & Cleaners Supply Inc., Rocky Mountain Hanger MFG Co., Rosenberg Supply Co., Ltd., and ZTN Management Company, LLC.

Ashley Akers, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice of Washington, DC for Defendant United States. With her on the brief were Chad A. Readler, Acting Assistant Attorney General, Robert E. Kirschman, Jr., Director, and Patricia M. McCarthy, Assistant Director. Of counsel was Jessica DiPietro, Attorney, U.S. Department of Commerce, Office of the Chief Counsel for Trade Enforcement and Compliance of Washington, DC.

Gordon, Judge: Before the court are the Final Results of Redetermination Pursuant to Court Remand ("Remand Results"), ECF No. 65-1, filed by the U.S. Department of Commerce ("Commerce") pursuant to Aristocraft of America, LLC v. United States, 42 CIT ___, 269 F. Supp. 3d 1316 (2017) ("Aristocraft").[1] Plaintiffs Shanghai Wells Hanger Co., Ltd., Hong Kong Wells Ltd., Hong Kong Wells Ltd. (USA), Best For Less Dry Cleaners Supply LLC, Ideal Chemical & Supply Company, Laundry & Cleaners Supply Inc., Rocky Mountain Hanger Mfg Co., Rosenberg Supply Co., Ltd., and ZTN Management Company, LLC (collectively, "Plaintiffs") challenge (1) Commerce's calculation of irrecoverable value-added tax ("VAT") based on the application of the standard VAT levy to the FOB export value of finished wire hangers and (2) Commerce's determination to continue using certain Thai companies' surrogate financial statements to calculate surrogate financial ratios. See Pls.' Cmts. on Final Results of Redetermination Pursuant to Court Remand, ECF No. 71 ("Pls.' Cmts."); see also Def.'s Response to Pls.' Cmts. on Commerce's Remand Results, ECF No. 76 ("Def.'s Resp."). Familiarity with prior administrative and judicial decisions in this action is presumed. The court has jurisdiction pursuant to Section 516A(a)(2)(B)(iii) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1516a(a)(2)(B)(iii) (2012),[2] and 28 U.S.C. § 1581(c) (2012).

For the reasons set forth below, the court remands Commerce's treatment of irrecoverable VAT and surrogate company financial statement selection.

---

[1] All citations to the remand results, the agency record, and the parties' briefs are to their confidential versions unless otherwise noted.

[2] Further citations to the Tariff Act of 1930, as amended, are to the relevant provisions of Title 19 of the U.S. Code, 2012 edition.

## I. Standard of Review

For administrative reviews of antidumping duty orders, the court sustains Commerce's "determinations, findings, or conclusions" unless they are "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i). More specifically, when reviewing agency determinations, findings, or conclusions for substantial evidence, the court assesses whether the agency action is reasonable given the record as a whole. Nippon Steel Corp. v. United States, 458 F.3d 1345, 1350–51 (Fed. Cir. 2006); see also Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951) ("The substantiality of evidence must take into account whatever in the record fairly detracts from its weight."). Substantial evidence has been described as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." DuPont Teijin Films USA v. United States, 407 F.3d 1211, 1215 (Fed. Cir. 2005) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). Substantial evidence has also been described as "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." Consolo v. Fed. Mar. Comm'n, 383 U.S. 607, 620 (1966). Fundamentally, though, "substantial evidence" is best understood as a word formula connoting reasonableness review. 3 Charles H. Koch, Jr., Administrative Law and Practice § 9.24[1] (3d ed. 2018). Therefore, when addressing a substantial evidence issue raised by a party, the court analyzes whether the challenged agency action "was reasonable given the circumstances presented by the whole record." 8A West's Fed. Forms, National Courts § 3.6 (5th ed.

2018).

Separately, the two-step framework provided in <u>Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.</u>, 467 U.S. 837, 842–45 (1984), governs judicial review of Commerce's interpretation of the Tariff Act. <u>See</u> <u>United States v. Eurodif S.A.</u>, 555 U.S. 305, 316 (2009) (An agency's "interpretation governs in the absence of unambiguous statutory language to the contrary or unreasonable resolution of language that is ambiguous."); <u>see generally</u> Harry T. Edwards & Linda A. Elliott, <u>Federal Standards of Review</u> 273–280 (3d ed. 2018).

## II. Discussion

### A. Value Added Tax

Plaintiffs contend that Commerce continues to err in its calculation of the amount of irrecoverable VAT to deduct from Shanghai Wells' export price ("EP") and constructed export price ("CEP"). The court previously held that "Commerce reasonably concluded that the phrase 'export tax, duty, or other charge imposed by the exporting country on the exportation,' [in] 19 U.S.C. § 1677a(c)(2)(B)[,] could be read to include [irrecoverable VAT]." <u>Aristocraft</u>, 42 CIT at ___, 269 F. Supp. 3d at 1325. The court also held, however, that Commerce's calculation of the deduction for irrecoverable VAT was unreasonable (unsupported by substantial evidence) and remanded this issue to Commerce for further explanation, and if appropriate, reconsideration. <u>Id.</u>, 42 CIT at ___, 269 F. Supp. 3d at 1326. Specifically, the court determined that Commerce's calculation of the amount of irrecoverable VAT, based on the FOB export value of the finished goods, appeared inconsistent with Commerce's definition of irrecoverable VAT as an unrefunded amount

of VAT "paid on inputs and raw materials (used in the production of exports)." See id.,
42 CIT at ___, 269 F. Supp. 3d at 1326. On remand, Commerce provided further
explanation in support of its calculation of an irrecoverable VAT deduction, in the amount
of eight percent, from Shanghai Wells' EP and CEP. See Remand Results at 3–4.

Commerce's Remand Results arrive at the same irrecoverable VAT deduction
Commerce made in the final determination. Commerce has added an additional
explanation of how Chinese law both supports Commerce's definition of irrecoverable
VAT and resolves the apparent inconsistencies between the definition, and calculation,
of the amount of irrecoverable VAT. See id. at 8–11, 23–25. In addition, Commerce relies
upon Shanghai Wells' questionnaire responses to justify its findings for Shanghai Wells'
irrecoverable VAT deduction. See id. at 11–12, 25–28. Despite Commerce's additional
explanation and clarification of its reasoning, Plaintiffs maintain that Commerce's
irrecoverable VAT determination remains unreasonable (unsupported by substantial
evidence). See Pls.' Cmts. at 6–13.

In Aristocraft the court could not reconcile (1) Commerce's definition of
irrecoverable VAT (an amount of unrefunded tax charged on "inputs and raw materials"),
with (2) Commerce's calculation of irrecoverable VAT based on the FOB export value of
finished merchandise. See Aristocraft, 42 CIT at ___, 269 F. Supp. 3d at 1326. Commerce
alluded generally to Chinese law as the source of any inconsistency between
(1) the definition and (2) its calculation. See Issues & Decision Memorandum for Steel
Wire Garment Hangers from the PRC, A–570–918 (Dep't of Commerce Mar. 6, 2015)
at cmt. 3,   available at   http://enforcement.trade.gov/frn/2015/1511frn/2015-28757.txt

(last visited this date) ("Decision Memorandum"). Commerce though did not cite to relevant provisions of Chinese law or otherwise reasonably explain how its (1) definition and (2) calculation of irrecoverable VAT were consistent with one another. Id. Accordingly, the court remanded the issue to Commerce to address how "VAT paid on inputs and raw materials (used in the production of exports) that is non-refundable" could reasonably be calculated using the value of finished goods rather than the value of the inputs and raw materials. See Aristocraft, 42 CIT at ___, 269 F. Supp. 3d at 1326.

In the Remand Results Commerce addresses the court's questions about the apparent inconsistencies between the definition and calculation of irrecoverable VAT by explaining the Chinese law underlying Commerce's irrecoverable VAT policy. See Remand Results at 7–10, 23–25 (citing Shanghai Wells' June 1, 2015 Supplemental Questionnaire Response, PD 134[3], at Ex. 12, "Circular on Value-Added Tax and Consumption Tax Policies on Exported Goods and Services, Cai Shui 2012 No. 39, May 25, 2012" ("2012 VAT Circular")). Specifically, Commerce relies upon the 2012 VAT Circular that describes the operation of Chinese VAT law. See Remand Results at 6–10, 22–26 (citing 2012 VAT Circular). The 2012 VAT Circular provides several formulae detailing how Chinese VAT is calculated for exported goods. See 2012 VAT Circular. Two of these formulae provide the basis for Commerce's (1) definition and (2) calculation of irrecoverable VAT.

_____

[3] "PD ___" refers to a document contained in the public administrative record available at ECF No. 17-4. "CD ___" refers to a document contained in the confidential administrative record available at ECF No. 17-5.

First, Commerce explains that Article 5.1 of the 2012 VAT Circular provides:

> Tax payable for the current period = output tax for the current
> period - (input tax for the current period - taxes prohibited
> from exemption and offset for the current period).

Remand Results at 24 (quoting the 2012 VAT Circular at art. 5.1(1) (the "Tax Payable

Formula")). In the Remand Results Commerce clarifies that the term "irrecoverable VAT"

was intended to describe the "taxes prohibited from exemption and offset" amount

provided in the above formula. See Remand Results at 25.

Second, Article 5.1 of the 2012 VAT Circular provides an additional formula that

explains how "taxes prohibited from exemption and offset" is calculated:

> Taxes prohibited from exemption and offset for the current
> period = FOB of exported goods for the current period × RMB
> conversion rate of foreign currency × (tax rate applicable to
> exported goods - tax refund rate for exported goods) -
> deductions of taxes prohibited from exemption and offset
> for the current period.[4]

See id. at 24 (citing 2012 VAT Circular at art. 5.1(1) (the "Taxes Prohibited from

Exemption Formula")). The use of "taxes prohibited from exemption and offset" in these

two formulae sheds light on the source of the apparent inconsistency between

---

[4] The 2012 VAT Circular also provides a formula for calculating "deductions of taxes
prohibited from exemption and offset" as: Deductions of taxes prohibited from exemption
and offset for the current period = price of duty-free raw materials purchased for the
current period × (tax rate applicable to exported goods - tax refund rate for exported
goods). 2012 VAT Circular at art. 5.1(1). However, because Plaintiffs have not claimed
any use of "duty-free raw materials" in the production of their exported goods, this
deduction is irrelevant and is omitted from Commerce's recitation of the formula. See
Remand Results at 24. Accordingly, for purposes of calculation in this case, Taxes
prohibited from exemption and offset for the current period = FOB of exported goods for
the current period × RMB conversion rate of foreign currency × (tax rate applicable to
exported goods - tax refund rate for exported goods).

Commerce's definition and calculation of irrecoverable VAT. Commerce explains that its definition of irrecoverable VAT (an unrefunded amount of VAT "paid on inputs and raw materials") is derived from the Tax Payable Formula in which "taxes prohibited from exemption and offset" (aka "irrecoverable VAT") are deducted from "input tax." See Remand Results at 24–25; Tax Payable Formula. Commerce then notes that its calculation of irrecoverable VAT, calculated as "FOB of exported goods for the current period x (tax rate applicable to exported goods - tax refund rate for exported goods)," mirrors the calculation of "taxes prohibited from exemption and offset" in the Taxes Prohibited from Exemption Formula. See Remand Results at 25; Taxes Prohibited from Exemption Formula. Accordingly, Commerce's definition of irrecoverable VAT describes how "taxes prohibited from exemption and offset" is used in the Tax Payable Formula; however, this figure has no direct connection to the amount of input VAT actually assessed on Chinese exported goods. Instead, Commerce appears to say that irrecoverable VAT, or "taxes prohibited from exemption and offset," stands for a numerical value calculated using the VAT tax and refund rates assessed against the value of finished export goods. See Remand Results at 8–10, 24–25; Tax Payable Formula; Taxes Prohibited from Exemption Formula.

Beyond the 2012 VAT Circular, Commerce relies upon accounting documents submitted by Shanghai Wells that appear to corroborate the reasonableness of an eight percent adjustment for irrecoverable VAT to Shanghai Wells' EP and CEP. See Remand Results at 10–12, 27–28. Specifically, Commerce cites to Shanghai Wells' accounting

data for June 2014 under account code X.[5] <u>See</u> <u>id.</u> at 27 (<u>citing</u> Shanghai Wells' June 1,

2015 Supplemental Questionnaire Response, PD 134, at Ex. 14). Account code X booked

an amount approximating eight percent of Shanghai Wells' export sales for June 2014.

<u>Id.</u> Accordingly, Commerce found that account code X identifies an amount of

irrecoverable VAT for June 2014, and the fact that the amount in account code X

approximates eight percent of export sales value corroborated the reasonableness of

Commerce's calculation of eight percent as the amount of irrecoverable VAT to deduct

from Shanghai Wells' EP and CEP. <u>Id.</u>

    Plaintiffs challenge Commerce's reading of Shanghai Wells' June 1, 2015

Supplemental Questionnaire Response as unreasonable given conflicting evidence in the

record as to the correct meaning and translation of account code X. <u>See</u> Pls.' Cmts. at

10–11. Plaintiffs suggest that the record contains alternative meanings and translations

for account code X. <u>See</u> <u>id.</u> (discussing alternate translations for the account code X and

suggesting that the labeling of account code X as connected to irrecoverable VAT

resulted from a singular "misunderstanding of the question").

    As Commerce explained, "[t]he record demonstrates that Shanghai Wells booked

to accounting code [X] an amount of approximately eight percent of its export prices and

consistently translated the account name in a manner indicating an irrecoverable amount.

Commerce did not selectively choose the translation that suited a desired outcome but,

rather, considered the record as a whole in deducing the meaning of Shanghai Wells'

---

[5] Account code X is [[          ]] identified in Shanghai Wells' questionnaire response
as [[                    ]].

inconsistent submissions." Remand Results at 28. Commerce further explained that this accounting code, while assigned slightly different nomenclature in Shanghai Wells' other questionnaire responses[6], appears to "describe an irrecoverable tax." Id. at 28. Plaintiffs simply fail to demonstrate that Commerce's interpretation of account code X is unreasonable and that the administrative record leads to one, and only one, reasonable interpretation of its meaning and translation. The court sustains as reasonable Commerce's finding that account code X books Shanghai Wells' irrecoverable VAT.

Although not persuaded by Plaintiffs' challenge to Commerce's interpretation of Shanghai Wells' questionnaire responses, the court nevertheless has some remaining doubts about the overall reasonableness of Commerce's calculation of irrecoverable VAT. Commerce's analysis of Chinese law certainly helps clarify the relationship between the calculation of irrecoverable VAT and its use within the Chinese VAT system. Remand Results at 7–9, 24–26. There is, however, an inherent and lingering issue that Commerce itself acknowledges when it notes that the 2012 VAT Circular "indicate[s] a link between the input VAT paid and tax paid or refunded." Id. at 9. Although Commerce urges the court not to read this language from the 2012 VAT Circular "in a way that confuses how the exporter incurs the cost on a transaction level for specific exports," Commerce reiterates that the complex rules of the Chinese VAT system confirm a "link" between input VAT paid and tax paid or refunded on the aggregate level. Id.

---

[6] Examples of this slightly different nomenclature include "[[                              ]]", "[[                  ]]", and "Total Un-exempted Tax".

Commerce downplays the relevance of this "link" by explaining that Commerce adjusts for irrecoverable VAT at the transaction-specific level rather than on an aggregate level. Id. at 8–9. Commerce further notes that Plaintiffs' alternative methodology for adjusting for irrecoverable VAT, i.e. accounting for input VAT actually paid in the adjustments to EP and CEP, introduces significant distortions to the calculations given that the input VAT figures may include offsets from periods outside of the period of review as well as distortions due to the time lag between the payment of input VAT at production and the subsequent exportation of finished merchandise. Id. at 9.

To summarize, Commerce clarified that "irrecoverable VAT" refers to "Taxes prohibited from exemption and offset," i.e., an amount of unrefunded tax charged on "inputs and raw materials." Id. at 7–10, 24–25 (emphasis added). Commerce further acknowledged that this deduction for "irrecoverable VAT" is in some way linked to the amount of input VAT that Shanghai Wells actually pays, but discounts the significance of this link. See id. at 9. The court is unfortunately still confused and cannot understand how a reasonable mind would conclude that the amount of input tax actually deducted from Shanghai Wells' VAT liability is "not relevant" to the adjustment of Shanghai Wells' EP and CEP. See id. at 6. Perhaps the phrase "not relevant" is causing the problem. Did Commerce instead mean "not calculable"? Is the "link" between Plaintiffs' input VAT and tax paid or refunded generally not calculable (or knowable) because of the complexity of the Chinese VAT system (meaning it is just not possible)? Or, is it at least theoretically possible to calculate (and account for) the "link" but not in this particular case because Plaintiffs have failed to proffer enough information and explanation against a dense and

complicated Chinese VAT system to enable Commerce to make the (transaction-specific) adjustment to Plaintiffs' EP and CEP? Or is something else going on? The court therefore must remand this issue again for Commerce to further explain, and reconsider, if appropriate, how its deduction of "taxes prohibited from exemption and offset" accounts for an amount of "input VAT not fully recouped on export sales" that Shanghai Wells includes in its price for export sales of finished wire hangers.

### B. Surrogate Company Financial Statement Selection

In this, the sixth administrative review, Commerce selected financial statements for calculating surrogate financial ratios from three Thai companies: LS Industries Co. ("LS Industry"), Sahasilp Rivet Industrial Co. Ltd. ("Sahasilp"), and Thai Mongkol Fasteners Co., Ltd. ("Mongkol"). See Decision Memorandum at 7–10. In Aristocraft the court remanded Commerce's selection of surrogate financial statements for Commerce "to address reasonably the importance of drawing wire from wire rod as a surrogate company selection criterion." Aristocraft, 42 CIT at ___, 269 F. Supp. 3d at 1335. On remand, Commerce acknowledged that it prefers "financial statements from companies that draw wire from wire rod to produce identical or comparable merchandise in order to calculate the surrogate financial ratios of an integrated producer such as Shanghai Wells." Remand Results at 14. Given that selection criterion, the question for Commerce was whether all three companies or just one, LS Industry, constituted the best available information to use as surrogate companies.

Commerce noted that it "did not directly address record evidence purporting to demonstrate that LS Industry drew wire from wire rod, which resulted in an incomplete

analysis of the record information." Remand Results at 17. That evidence is "six photos of extremely poor quality" that appeared on the website of LS Industry. Remand Results at 19. Plaintiffs argue that the photos contain images that "obviously resemble" wire rod coils and wire drawing machinery. See Pls.' Cmts. at 17. The photos, though, have no captions. See Remand Results at 31. Commerce, noting its knowledge of "material and machinery involved in the production of subject merchandise," concluded that the "type of machine is not discernable." Id. at 19. Commerce also noted that "Shanghai Wells reported that it used a straightening machine to straighten steel wire before it is fed through the hanger forming machine and there is nothing on the record to support the claim that the machine pictured is not, in fact, a straightening machine rather than a wire drawing machine, or any other type of machine." Id. Commerce also concluded that it could not "determine whether the material pictured is wire rod or, instead, any number of other products, e.g. steel bar, reinforcing bar, steel strip, or bundles of any other type of coiled materials." Id. at 20. As a result, Commerce determined "that the financial statements of LS Industry, Sahasilp, and Thai Mongkol, all represent equally suitable financial statements … [and a]bsent definitive evidence to the contrary, all three statements represent the best available information on the record of this review for calculating surrogate financial ratios." Id.

Plaintiffs challenge as unreasonable Commerce's conclusion that the three companies "equally satisfy its selection criteria." Id. at 14. Plaintiffs, however, do not make the straightforward argument that Commerce's determination is unreasonable because a reasonable mind would have to conclude that the photographs only depict wire rod and

wire drawing machinery. Id. at 16–19. Rather, Plaintiffs dismiss Commerce's suggestion

that the photographs may depict wire straightening machinery and coiled material other

than wire rod as speculation, and argue that Commerce must instead accept Plaintiffs'

proffered view that the photographs likely depict wire rod and wire drawing machinery. Id.

According to Plaintiffs, Commerce must accept Plaintiffs' speculative inference about the

photographs—that they depict wire drawing machine and wire rod in coils—and reject an

alternative, but equally speculative inference—that LS Industry maintains wire

straightening machinery and coiled material other than wire rod. The court has no idea

which of the two inferences is correct. Both seem plausible. What the court cannot do is

direct Commerce to favor Plaintiffs' preferred evidentiary inference over another

reasonable inference. See Mitsubishi Heavy Indus. Ltd. v. United States, 275 F.3d 1056,

1062 (Fed. Cir. 2001) ("'[T]he possibility of drawing two inconsistent conclusions from the

evidence does not prevent an administrative agency's finding from being supported by

substantial evidence.'" (quoting Consolidated Edison, Co. v. NLRB, 305 U.S. 197, 229

(1938))). This issue ultimately boils down to a problem of proof for Plaintiffs. Plaintiffs

could have done much more to remove doubts about the photographs (and undermine

any competing inferences). Better quality photos and better authentication would have

helped, as would have affidavits from its own operators and fabricators explaining what

the photographs depicted. It bears repeating that the burden to develop the administrative

record rests on interested parties like Plaintiffs. QVD Food Co. v. United States, 658 F.3d

1318, 1324 (Fed. Cir. 2011) ("'[T]he burden of creating an adequate record lies with

[interested parties] and not with Commerce.'" (quoting Tianjin Mach. Imp. & Exp. Corp.

v. United States, 16 CIT 931, 936, 806 F. Supp. 1008, 1015 (1992)). Without the additional evidentiary proffer, Plaintiffs simply ask too much of the court to wade into fact finding on a sparse record.

Plaintiffs additionally argue that Commerce unreasonably discounted "other deficiencies" in the financial statements of Mongkol and Sahasilp. See Pls.' Cmts. at 19–21. Plaintiffs note that Sahasilp's "company profile" does not list wire rod drawing among its "Key Manufacturing Process." Id. at 19. Similarly, Plaintiffs observe that Mongkol's website lists various types of machinery but fails to specifically include wire rod drawing machinery. Id.  Plaintiffs contend that this absence of evidence indicates that Sahasilp and Mongkol do not even arguably draw wire from wire rod and are accordingly not "equally suitable" as surrogate producers of comparable merchandise. Id.  The court is not persuaded. Here again Plaintiffs have a problem of proof. Missing is an important evidentiary foundation that companies that draw wire from wire rod would always advertise that fact on their website or list it as a key manufacturing process.  Without that foundation on the administrative record, Commerce was able to reasonably conclude that the lack of mention of wire drawing or wire drawing machinery on Mongkol's or Sahasilp's website or online company profile did not provide a sufficient basis to determine whether either company drew wire from wire rod. Accordingly, Commerce found "that no information on the record demonstrates that any of the potential surrogate financial companies draw wire from wire rod." Remand Results at 33.

The court here cannot muscle aside Commerce and order it to use LS Industry's financial statement alone. Plaintiffs simply failed to establish on the administrative record

that LS Industry, and LS Industry alone, was the best available information to use as a surrogate company. Commerce reasonably concluded that "LS Industry's financial statements are not superior to Sahasilp's or Mongkol's" and that "all three financial statements are equally suitable for valuing Shanghai Wells' financial ratios." Remand Results at 32–33. Accordingly, the court sustains Commerce's use of all three surrogate companies' financial statements.

### III. Conclusion

For the foregoing reasons, it is hereby

**ORDERED** that Commerce's selection of surrogate companies is sustained; it is further

**ORDERED** that the Remand Results are remanded to Commerce to further explain, and reconsider, if appropriate, how its deduction of "taxes prohibited from exemption and offset" accounts for an amount of "input VAT not fully recouped on export sales" that Shanghai Wells includes in its price for export sales of finished wire hangers; it is further

**ORDERED** the Commerce shall file its remand results on or before September 26, 2018; and it is further

**ORDERED** that, if applicable, the parties shall file a proposed scheduling order with page limits for comments on the remand results no later than seven days after Commerce files it remand results with the court.


                                                    /s/ Leo M. Gordon
                                                   Judge Leo M. Gordon


Dated: August 9, 2018
         New York, New York